**Opinion filed June 12, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00204-CV

_____

### ELENA HUTCHINS, Appellant

### V.

### DAVID DONLEY, Appellee

**On Appeal from the 274th District Court**

**Comal County, Texas**

**Trial Court Cause No. C2006-0656C**

### M E M O R A N D U M   O P I N I O N

This appeal arises from cross-petitions in which Elena Hutchins and David Donley sought to modify the parent-child relationship with their two minor children. Because we find that the trial court abused its discretion when it appointed the amicus attorney and when it excluded the results of a social study as a sanction for Hutchins's failure to pay the amicus attorney, we reverse and remand.

Hutchins presents three issues for our review.[1]  In her first issue, she contends that the trial court erred when it excluded a social study as a sanction for failing to pay the amicus attorney.  Hutchins argues in her second issue that the trial court made two reversible errors regarding the appointment of the amicus attorney.  And, in her third issue, Hutchins asserts that the trial court erred when it assigned postjudgment interest in an amount that exceeded the amount permitted by statute and erred when it ordered the postjudgment interest, on the conditional award of appellate attorney's fees to Donley, to accrue from the date of the trial court judgment instead of the date of the appellate court judgment.

We will first address Hutchins's second issue in which she contends that the trial court erred in two ways regarding the appointment of the amicus attorney, Phylis Offerman.  Hutchins asserts that the trial court erred by (1) not giving due consideration to the parties' ability to pay and (2) ordering Hutchins to pay Offerman for services that were not owed.

Section 107.021 permits the trial court to appoint an amicus attorney in a suit in which the best interests of a child are at issue.  TEX. FAM. CODE ANN. § 107.021(a) (West 2014).  The court, in determining whether to make an appointment, shall give due consideration to the ability of the parties to pay reasonable fees to the amicus attorney and shall balance the child's interests against the cost to the parties.  *Id.* § 107.021(b)(1).  The court may make the appointment only if it finds that the appointment is necessary to ensure the determination of the best interests of the child.  *Id.* § 107.021(b)(2).  In addition, the court may not require the amicus attorney to serve without reasonable compensation for the services that the amicus attorney renders.  *Id.* § 107.021(b)(3).

---

[1]We note that Hutchins identifies five issues for review in her "Issues Presented" section of her brief. However, in the body of her brief, Hutchins presents three issues for review.  We will review the three issues as presented in the body of her brief in disposing of her case.  *See* TEX. R. APP. P. 38.1.

2

Hutchins and Donley divorced in 2005. In June 2010, Hutchins filed a petition to modify the divorce decree, and Donley filed a counterpetition. The parties initially represented to the trial court that they had agreed that Offerman would be appointed as an attorney ad litem for the two minor children and that the parties would split the cost of her $3,000 retainer fee. The parties also agreed that, if they could not agree on a counselor for the children, Offerman would decide. On July 27, 2010, about a month later, the parties signed a mediated settlement agreement in which they agreed that Offerman would serve as an amicus attorney and that she would decide two specific issues: (1) who the children's counselor would be if the parties could not mutually agree upon a counselor and (2) where the children would attend school.

The parties were unable to agree upon a counselor, and Offerman made a recommendation to the court. Offerman also made a recommendation to the court as to which school the children should attend. The trial court followed Offerman's recommendations and, on August 9, 2010, entered an order as to who the counselor would be and as to what school the children would attend.

Thereafter, Offerman continued to be involved in the case. There were many matters about which the parties could not agree. Accordingly, Offerman assisted the parties in scheduling various medical appointments, registering the children for school, and dealing with issues at school regarding missed classes and assignments. In March 2011, Offerman filed a motion for temporary orders in which she argued that the trial court should limit Hutchins's rights and duties regarding the children and that the trial court should expand Donley's rights and duties. Hearings on the motion for temporary orders were held in April and August 2011. At the August hearing, the trial court agreed with Offerman's recommendations and limited Hutchins's possession of the children to that under the standard possession guidelines provided in the Family Code. The trial court

3

also suspended Donley's duty to pay child support in the amount of $1,850 per month. The trial court did not issue written temporary orders until November 2011.

In April 2011, Hutchins filed a motion to remove Offerman as the amicus attorney and alleged that Offerman had failed to satisfy the minimum qualifications and duties required under Sections 107.003 and 107.005 of the Family Code. The trial court denied her motion. Hutchins filed a motion to disqualify Offerman on October 24, 2011, and argued that Offerman had also violated Section 107.007. FAM. § 107.007. The trial court denied that motion as well. On October 26, 2011, Offerman filed a motion for an additional deposit to secure fees and asked the trial court to order the parties to pay the balance on the current invoice as well as for each party to pay her an additional $5,000 retainer. The trial court held a hearing on November 29 and ordered Hutchins to pay $2,902.30 and Donley to pay $2,005 by December 9, 2011, and also ordered each party to pay an additional retainer in the amount of $5,000 by December 29, 2011. The written order was not signed until December 29, 2011.

On November 1, 2011, the trial court granted Hutchins motion for a social study with the condition that Hutchins pay for the social study in full. The social study was to be completed by December 15, 2011, and if Hutchins could not pay for the study in full, it was not to be completed. The order permitted the cost of the social study to be reallocated at the final trial on the merits.

The social study was paid for and completed; however, Hutchins did not pay her portion of the amicus fees, and Offerman filed a motion in which she requested that Hutchins be required to appear and show cause as to why she failed to comply with the court's order. On January 17, 2012, the trial court conducted a hearing regarding the amicus fees and regarding the possibility of imposing sanctions against Hutchins for failure to pay the fees. Hutchins's attorney pointed out that

4

there was no written order appointing Offerman and no order as to what portion of the fees each party was required to pay. Offerman represented to the trial court that there was an agreement between the parties and that an agreed order should have been signed on June 18, 2010. Offerman also pointed out that the trial court's docket sheet indicated that Offerman was appointed as the ad litem attorney on that day even though the parties agreed she would be the amicus attorney. The trial court explained at the hearing that the parties had been operating as if Offerman had been appointed as an amicus attorney and that, therefore, the court would go ahead and appoint her. The trial court entered a retroactive order in which it appointed Offerman and ordered the parties to split her fees 50/50. The order reflected that the parties had agreed on the appointment on July 2, 2010.[2] Hutchins's attorney objected to the trial court's retroactive appointment of Offerman on the bases that Hutchins had withdrawn her consent to any agreement entered into by the parties and that, up until that point, there had been no order appointing Offerman.

Hutchins then testified about her financial status. She testified that she had $40 to $50 in the bank and that she made $200 to $400 per month. Her bills were $2,400 per month, and she was only able to pay her bills through funds given to her by her family and fellow church members. She was receiving $1,850 per month in child support, but lost that support when the trial court suspended Donley's duty to pay child support in the temporary orders. Hutchins testified that she did not have the funds to pay Offerman. She consulted with family and friends, and they did not want to pay Offerman any more money because they had already paid her $22,000. The money for the social study did not come from her; it

---

[2]The first sentence of the order states July 2, 2011, but further down in the order, the date is reflected as July 2, 2010. The record, however, shows that the parties represented to the trial court on June 18, 2010, that Offerman would serve as an ad litem attorney and also shows that the parties signed a mediated settlement agreement on July 27, 2010, in which the parties agreed that Offerman would serve as an amicus attorney for two specific decisions.

came from donations from people from her church and from friends and family. Hutchins also testified that she was willing to work out a payment plan and that she had already paid Offerman $77 toward what she owed.

The trial court found that she did have the ability to pay despite her testimony that she did not. The trial court explained that it was taking into consideration the fact that Hutchins was able to come up with a $10,000 retainer to pay her new attorney and $3,000 for the social study. The trial court also noted that Hutchins did not have a problem making payments to Offerman until the trial court denied Hutchins's motion to disqualify Offerman. The trial court again ordered Hutchins to pay the amicus fees due to Offerman or to work out an agreed payment plan with Offerman. The trial court informed Hutchins that the social study would be struck if she did not pay the fees by that Friday.

Hutchins did not pay the fees. The trial court found that she had the ability to pay and that she chose to pay for the social study instead of paying the fees due to Offerman. The trial court struck the social study, and Hutchins's attorney made an offer of proof. Hutchins's attorney submitted the expert's report regarding the social study and represented to the trial court that, if the expert had been allowed to testify, she would, if push came to shove, choose Hutchins as the primary conservator, although in her report, she recommended that the parties split the time with their children equally with no primary conservator. Hutchins's attorney explained that the expert's testimony was critical and important for the jury to hear and that it was in the best interests of the children to present the expert's testimony and report to the jury. The trial court noted that it did not believe striking the social study would take that much away from the jury because the expert did not recommend a primary conservator in her report and because the jury had heard testimony for a week regarding the issue of who should be the primary conservator.

6

After a trial on the merits, the jury found that Donley should have the exclusive right to designate the primary residence, that Hutchins's attorney's fees were $40,000, that Donley's attorney's fees were $50,000, and that Offerman's fees were $51,000. The trial court entered a final order in which, among other things, it ordered Hutchins to pay $10,323 to Offerman plus 6% postjudgment interest and awarded $25,000 to Donley in the event that Hutchins pursued an unsuccessful appeal.

In her first complaint regarding the appointment of Offerman, Hutchins contends that the trial court did not consider the parties' ability to pay Offerman's fees when it appointed Offerman as amicus attorney. Although the trial court did not hear testimony from Donley regarding his ability to pay, the trial court did hear testimony from Hutchins regarding her ability to pay. And, despite the fact that Hutchins testified that she did not have the ability to pay, the trial court found that she did. In making that finding, the trial court took into consideration the fact that Hutchins came up with $3,000 to pay for the social study and $10,000 to pay her new lawyer's retainer fee. Thus, the trial court did give consideration to the parties' ability to pay; it determined that Hutchins had the ability to pay.

The statute, however, also requires the trial court to balance the children's interests against the cost of the amicus to the parties. *See* FAM. § 107.021(b)(1). There is no indication in the record that the trial court performed this balancing test when it decided to appoint Offerman. At one of the hearings in which Hutchins's attorney pointed out that there was no written order appointing Offerman, Hutchins's attorney also noted that Hutchins had paid $22,500 toward the amicus fees and that Donley had only paid $9,700. The jury, after hearing testimony from Offerman regarding her fees, found that Offerman was entitled to $51,000 in amicus attorney's fees. Offerman also testified that Hutchins had paid her $17,177 at the time of trial. The record shows that, even when Hutchins sought to remove

Offerman in April 2011, each party had paid at least $6,500 toward Offerman's fees.

By the time the trial court entered an order to appoint an amicus attorney, Offerman had already satisfied her duties under the initial agreement of the parties—to choose a counselor and a school for the children—and had also recommended to the court that Donley be given the right to designate the primary residence and that the trial court suspend his duty to pay child support. In following Offerman's recommendation, the court entered temporary orders that gave Donley the right to designate the primary residence, relieved Donley of his duty to pay child support, and reduced Hutchins's time of possession. Thus, at the time the trial court actually entered an order appointing Offerman as the amicus, it had already been informed of what arrangement Offerman believed was in the best interest of the children. If the trial court had balanced the interests of the children with the cost of the amicus to the parties, it could not have determined that it should appoint the amicus. Donley's position was the same as Offerman's position, and Donley advocated his position to the court and later to the jury. Thus, the trial court abused its discretion when it appointed Offerman as the amicus attorney because the cost of the amicus, under these circumstances, greatly outweighed any future benefit the amicus attorney would provide the court regarding the children's best interest.

We recognize that the trial court's order appointing Offerman was retroactive, in that the court signed it on January 17, 2012, but indicated Offerman had been appointed since June 2010. The trial court indicated that it would make the order retroactive because that is the way the parties had been operating. However, Hutchins opposed having Offerman remain in the role of amicus attorney as of April 2011. Thus, although Offerman continued to be involved in the case, Hutchins did not agree that Offerman should continue as amicus, nor had

8

a court order been entered that allowed Offerman to continue as amicus. Because Offerman had completed the terms of the initial agreement between the parties, because Hutchins had revoked her consent to any other implied agreement that may have been in place regarding Offerman's appointment, and because there was no court order in place at the time that Offerman rendered services or requested to be paid for her services, we hold that the trial court erred when it ordered Hutchins to pay Offerman's fees.

In her first issue, Hutchins argues that she is entitled to a new trial because the trial court erred when it excluded relevant evidence as a sanction for her failure to pay Offerman. Because we have held that the trial court abused its discretion when it appointed Offerman and when it ordered Hutchins to pay for services that Offerman rendered without having been appointed, we also hold that the trial court erred when it sanctioned Hutchins for her failure to pay Offerman.

Having found that the trial court erred when it appointed Offerman as amicus attorney and when it excluded the social study as a sanction, we must now determine whether such errors probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). We conclude that the errors did cause the rendition of an improper verdict as to attorney's fees and probably caused the rendition of an improper verdict as to who was to be given the right to designate the primary residence of the children. Offerman's services from April 2011 to January 17, 2012, were unauthorized, and she was not entitled to recover attorney's fees for those services. Thus, the jury's verdict that Offerman was entitled to $51,000 in fees was improper. In addition, if the trial court had not erred when it appointed Offerman, Offerman would not have participated in the trial as an amicus and would not have recommended to the jury that Donley be appointed the primary conservator. Furthermore, the author of the social study would have testified that, if push came to shove, she would recommend Hutchins as the

9

primary conservator of the children. The children also testified that they would prefer to live with Hutchins. Without Offerman's recommendation and with the recommendation of the author of the social study, we believe that the jury could have designated Hutchins as the primary conservator. Therefore, we conclude that the trial court's errors probably caused the rendition of an improper verdict. We sustain Hutchins's first and second issues.

Hutchins argues in her third issue that the trial court erred when it assigned postjudgment interest on the attorney's fees due to Offerman in an amount that exceeded the amount permitted by statute and when it ordered that the postjudgment interest on Donley's appellate fees would accrue from the date of the trial court's final order instead of the date of the appellate court's final order. Donley does not brief this issue on the merits but instead suggests that, if we find the issue to have merit, we modify the judgment as to the amount of interest and the accrual date as suggested by Hutchins. Because we have sustained Hutchins's first two issues, it is not necessary for us to reach Hutchins's third issue. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's order appointing Offerman and the trial court's final order on the suit affecting the parent-child relationship, and we remand the cause to the trial court for further proceedings.


JIM R. WRIGHT
CHIEF JUSTICE


June 12, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

10